IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALEJANDRO CASILLAS PRIETO | § | |
| | § | CIVIL ACTION NO. 4:14CV136 |
| v. | § | CRIMINAL NO. 4:10CR169(1) |
| | § | |
| UNITED STATES OF AMERICA | § | |

**ORDER OF DISMISSAL**

The above-entitled and numbered civil action was referred to United States Magistrate Judge Christine A. Nowak. The Report and Recommendation of the Magistrate Judge (Dkt. 32), which contains proposed findings of fact and recommendations for the disposition of such action, has been presented for consideration. The Magistrate Judge concluded that Prieto fails to carry his burden under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984), and accordingly, his ineffective assistance of counsel claim fails. The Report recommends that Prieto's Motion to Vacate, Set Aside, or Correct Sentence be denied and the case dismissed with prejudice. Prieto has filed written Objections (Dkt. 33). Having made a *de novo* review of the Objections, the Court concludes that the findings and conclusions of the Magistrate Judge are correct, and adopts the same as the findings and conclusions of the Court.

In his Objections, Prieto maintains he is entitled to relief under § 2255 because he received ineffective assistance of counsel during the plea bargaining process. He objects specifically to the following four (4) of the Magistrate Judge's findings of fact:

(1) the Government's witnesses are more credible than Prieto (Dkt. 33 at 1-7);

(2) Prieto was advised in terms he could understand that, by refusing the Government's plea offers, he faced a life sentence should he lose at trial (*id.* at 7-8);

1

(3) Prieto was given sufficient advice of the strengths and weaknesses of the Government's case to make an informed decision regarding whether to accept a plea bargain or proceed to trial (*id.* at 8-9); and

(4) the record does not establish that Prieto would have accepted any of the Government's plea offers (*id.* at 9-10).

Each of the disputed findings of fact rests on the Magistrate Judge's determination of the credibility of the witnesses presented at the evidentiary hearing. Thus, at the heart of each of Prieto's objections is a contention that his testimony at the evidentiary hearing, his affidavit, and the assertions in his pleadings are more credible than contrary assertions of fact by the Government's witnesses. Prieto asks the District Court to reconsider the evidence, reject the Magistrate Judge's credibility determination, and conclude he is more credible than the Government's witnesses and/or evidence.

Under 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court," of "dispositive" motions. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S. Ct. 2406 (1980). The statute further provides:

> A judge of the court shall make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b)(1)(C) (emphasis added). By its terms, § 636(b)(1)(C) grants the district court broad discretion to accept or reject the magistrate's findings; however, this discretion is not unlimited.

2

Under the terms of the statute, the district court may *accept* the credibility determination of the magistrate after reviewing the record, without conducting an independent hearing. *See United States v. Scribner*, 832 F.3d 252, 260 (5th Cir. 2016) (vacating the district court's denial of a § 2255 motion because the decision was based on implicit rejection of the magistrate's credibility finding without a hearing; explaining that, on remand, the district court was free to accept the magistrate's credibility determination without holding a hearing, or in the alternative, reject the magistrate's determination and come to its own conclusion after a hearing); *Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980) ("a district judge may accept a magistrate's findings concerning credibility and not violate due process."); *see also United States v. Marshall,* 609 F.2d 152, 155 (5th Cir. 1980) ("a district judge who reviews the record of the hearing before the magistrate and adopts the magistrate's recommendations need not conduct a new hearing."). In contrast, a district court's discretion to *reject* a finding of the magistrate is limited where:

> (1) the finding is based on the credibility of the witnesses the magistrate heard, and (2) the finding is dispositive of an application for post-conviction relief involving the constitutional rights of a criminal defendant. In *Blackburn* [the Fifth Circuit] held that in such circumstances the district judge cannot reject the finding without personally hearing live testimony from the witnesses whose testimony is in issue.

*Jordan v. Hargett*, 34 F.3d 310, 313 (5th Cir. 1994*), on reh'g en banc,* 53 F.3d 94 (5th Cir. 1995); *see also Scribner*, 832 F.3d at 259 (explaining that a district judge may not reject the credibility finding of a magistrate judge without holding a new evidentiary hearing); *Garcia v. Boldin*, 691 F.2d 1172, 1179 n. 13 ("Where the district judge makes material credibility choices *at variance* with those of the magistrate, the judge must, at least in certain cases, have a hearing at which he or she personally hears the testimony."); *Blackburn*, 630 F.2d at 1110 ("If the district judge doubts the credibility determination of the magistrate, only by hearing the testimony himself does he have an adequate basis on which to base his decision.").

Having made a *de novo* review of the record, including the transcript of the evidentiary hearing, the Court is of the opinion that the Magistrate Judge's credibility determination is correct. It is apparent from the Report that the Magistrate Judge found much of Prieto's testimony to be implausible. In particular, the Magistrate Judge concluded Prieto's credibility was undermined by his claims that: (1) he chose to follow the legal advice of his attorney's associate, even though it directly contradicted the ardent advice of his attorney of record; (2) he did not understand the meaning of "conspiracy" as charged in the Indictment, and no one explained it to him at any point between his August 6, 2010, arrest and his July 11, 2012, sentencing; (3) a probation officer misconstrued Prieto's statement encouraging a codefendant to take responsibility for other, uncharged, criminal activity as encouragement to take responsibility for Prieto's part in the drug conspiracy alleged in the Indictment. *See* Dkt. 32 at 13-14.

Instead of reconciling the inconsistent and implausible assertions in his own testimony, Prieto's Objections focus on the relative credibility of the Government's witnesses, Rafael De la Garza, Marston Alexander, and Special Agent Heriberto Quiroga. *See* Dkt. 33 at 6. Prieto points to the length of De la Garza, Alexander, and Quiroga's careers and the volume of criminal cases they have each handled over the years as indicia that their recollection of specific events in this case is unreliable. *See id.* Prieto further contends that, since this case represents his first and only involvement in the criminal justice system, his memory of events is clearer. *See id*. However, De la Garza, Alexander, and Quiroga specifically recalled occasions when one or more of them advised Prieto of his sentencing exposure, and each testified to the use of several discrete Spanish terms to render this advice. *See* Dkt. 31 at 52-53, 70, 77-78, 92. In light of De la Garza, Alexander, and Quiroga's unequivocal testimony regarding the events at issue in this case, Prieto's argument regarding deficiencies in the witnesses' memories is pure speculation.

Moreover, Prieto's argument regarding the length of the Government witnesses' careers in criminal justice is further unavailing because, while De la Garza, Alexander, and Quiroga each testified regarding their general practices and extensive experience related to interviewing and advising Spanish-speaking criminal defendants, these same witnesses also testified regarding specific advice given to Prieto during pretrial negotiations. *See id.* at 48-59, 60-62, 69-70, 73-74, 77-78, 83, 85-86. De la Garza, in particular, recalled specific details and events related to his representation of Prieto, as well as the basis for his recollection and his general practices in similar cases. De la Garza testified:

> Q Can you describe for us what words in Spanish you used to tell this defendant that he was facing a potential life sentence?
>
> A Originally the term that I always use to tell someone that they are looking at a life sentence is la vida, which means life. I would also tell people that you're going to die in jail basically, because you're in there for life, la vida --
>
> Q Okay. Hold on. That you're going to die in jail?
>
> A Correct.
>
> Q How do you say --
>
> A I would say it, vas a morir en la carcel. In jail.
>
> Q Basically --
>
> A Slang.
>
> Q Can you spell that?
>
> A Not at this time I can't.
> Q Okay. So in Spanish you would say you're going to die in jail?
>
> A Correct.
>
> Q Now you said that that is generally how you would handle it in your practice. Can you describe what you told Mr. Prieto?
>
> A It would go from either la vida or vas a morir. Mostly it would be la vida, because that's the way we always say life imprisonment. Then on one of the occasions, the month prior to trial where we were going back and forth with plea offers between Ernest Gonzalez and the defendant, I took -- I met the interpreter, Luis Garcia at

5

> the jail and I asked him to come in and translate for me because I wanted to make sure there were no misunderstandings and that he understood that that particular plea offer -- the government was agreeing to charge him with a new offense of alien in possession of a firearm, number one. That he would have to waive jurisdiction because the jurisdiction would have been in the Northern District, and that he was looking at a two and a half year plea deal. Two and a half years. And that he was still looking at life imprisonment if we were to proceed to trial. And if we came in second place, then the likelihood is this judge would give him life sentence.
>
> Q And you told him that in Spanish?
>
> A No, I told him that in English using the interpreter that we had. And that is the first time that I believe he ever heard us using the phrase car[]dena perpetua, which is life imprisonment formally.
>
> Q Okay. And before that, you say that you had used the more -- what you describe I think as a slang term, la vida.
>
> A Life.
>
> Q Your life?
>
> A Correct.
>
> Q Or you're going to die in prison?
>
> A Correct. Being more graphic, letting him know that he was not going to get out. He was not going to parole out or anything like that in the federal system.
>
> Q Okay. So he was told using the two slang terms, but then also once Mr. Garcia, the court interpreter or translator assisted you, the more formal term, ca[]dena perpetua.
>
> A Correct.

Dkt. 31 at 57-59. On cross-examination, De la Garza clarified that he had a specific recollection of the events of this case, which stood out to him because he "couldn't believe [Prieto] was rejecting [the Government's] plea offers." *Id.* at 70.

The plea offers proffered to Prieto were admittedly favorable. However, ample evidence in the record reflects that Prieto rejected such offers, not because he did not understand they were favorable, or his potential sentence at trial; but, rather, because Prieto did not desire to be deported or removed from the United States. The evidence reflects that Prieto "was in the country illegally

and he had no standing to be in this country." Dkt. 31 at 59-60. Alexander attested by Affidavit, that "Mr. Prieto stated that he could not accept the [plea] offer because he did not want to be deported." Dkt. 19 at 2. De la Garza similarly testified that Prieto ignored his advice to enter a guilty plea and proceeded to trial because Prieto feared deportation. Dkt. 31 at 59-60. De la Garza explained at the hearing that Prieto was advised "if he was going to enter into a plea agreement, that one of the consequences of signing a plea agreement would be deportation;" Prieto chose to proceed to trial so that he could remain in the United States. *Id*. at 60. Against this backdrop, the Court concludes that the Government witnesses' testimony is bolstered, not undermined, by their long involvement in the criminal justice system, particularly in light of their ability to state with certainty how their conduct in Prieto's case was reflective of their usual and habitual practice in similar cases.

Finally, the Court finds it compelling that De la Garza, Alexander, and Quiroga each testified that they personally communicated Prieto's sentencing exposure to him on several distinct occasions, using varied Spanish phrases, but nearly always employing the word "*vida*." Prieto does not challenge the Magistrate Judge's finding that:

> based on Prieto's affidavit and testimony, his purported comprehension of Spanish translations of "life imprisonment" hangs on the Spanish word "*vida*"—the literal translation of the word "life."

Dkt. 32 at 15. And the Magistrate Judge correctly observed:

> [T]his case involved court interpreters, a defense team, a prosecuting attorney, and an investigating federal agent who were all fluent in Spanish. Three (3) of these individuals testified that they personally advised Prieto of his sentencing exposure prior to trial; moreover, they stated they employed the term "*vida*," which Prieto admitted he would have understood as "life." De la Garza stated he specifically used the phrase "*la vida*" ("life"), along with "*vas a morir en la carcel*" ("you're going to die in jail"). *Id.* at 56-57 (emphasis added). Alexander testified that Prieto's sentencing exposure was conveyed as: "*podrias pasar el resto de tu vida en la carcel*" ("you could spend the rest of your life in jail"). *Id.* at 78 (emphasis added). Special Agent Quiroga testified that he used "*cadena perpetua*" at the first proffer

7

> session, but later advised Prieto that he faced "*la vida en la carcel*" ("life in jail"). *Id.* at 92 (emphasis added).

*Id.* at 15-16.

Although Prieto testified he would have used the term "*vida en prisión*" to indicate life imprisonment, De la Garza, Alexander, and Quiroga could not have heard his testimony, as the witnesses were sequestered during Prieto's examination. *See* Dkt. 31 at 9, 44-45, 80. Furthermore, Prieto did not make this assertion in his pleadings or affidavit. Under the circumstances, the Government's witnesses had no opportunity to conform their testimony to Prieto's purported understanding before testifying. Prieto concedes, "[i]t may be that Alexander and Special Agent Heriberto Quiroga had little to gain by corroborating some of De la Garza's claims." Dkt. 33 at 6. On review of the record at the evidentiary hearing, the Court tends to agree.

In conclusion, the Magistrate Judge found much of Prieto's testimony to be implausible. Further, each of the Government's witnesses not only testified to their usual and ordinary course of interacting with Spanish-speaking clients, but recalled specific details and events concerning Prieto's case and their efforts to convince Prieto to plead guilty pursuant to the favorable plea offers. It is clear that De la Garza advised Prieto he faced a life sentence if he proceeded to trial. As for Prieto's reasoning in declining the favorable plea offers, it is particularly telling that he greatly feared deportation should he accept a guilty plea. Finally, each of the Government witnesses personally communicated Prieto's sentencing exposure to him.

In light of the foregoing, the Court accepts the Magistrate Judge's finding that the Government's witnesses are more credible than Prieto. Prieto does not request a new evidentiary hearing and the Court finds no reason to conduct an independent hearing in this case. Furthermore, since each of Prieto's Objections rests on his contention that the Magistrate Judge's credibility finding is erroneous, his Objections lack merit.

It is therefore **ORDERED** that Movant's Objections (Dkt. 33) are **OVERRULED**. It is further **ORDERED** that the Motion to Vacate, Set Aside or Correct Sentence (Dkt. 1) is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions by either party not previously ruled on are hereby **DENIED**.

**SIGNED this 28th day of March, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE